| | |
|---|---|
| RETURN DATE: DECEMBER 22, 2020 | : SUPERIOR COURT |
| GREAT NORTHERN INSURANCE COMPANY a/s/o Christopher Kraus and Darcy Stacom | : J.D. OF FAIRFIELD |
| | : AT BRIDGEPORT |
| VS. | : |
| WHIRLPOOL CORPORATION, ET AL | : NOVEMBER 10, 2020 |

## COMPLAINT

**COUNT ONE- PRODUCTS LIABILITY AS TO WHIRLPOOL CORPORATION**

1. The Plaintiff, Great Northern Insurance Company, is a New Jersey corporation authorized to issue policies of insurance in the State of Connecticut.

2. At all times relevant hereto, Great Northern Insurance Company's insureds, Christopher Kraus and Darcy Stacom, ("Insureds") owned property located at 12 Wells Hill Road, Easton, CT ("the Insured's Property" or "the Property").

3. Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with a principal place of business located at 2000 North M-63, Benton Harbor, MI, 49022.

4. At all times relevant herein, Whirlpool was engaged in the business of designing, manufacturing, assembling, marketing, testing, inspecting, distributing and selling refrigerators throughout the United States, including the State of Connecticut, such as the one at issue here.

5. Whirlpool designed, manufactured, marketed, distributed and placed into the stream of commerce refrigerators along with their accompanying component part(s), said products being intended for use by consumers for the ordinary purposes associated with cold food refrigeration and storage.

6. At all times relevant to this Complaint, Defendant Whirlpool knew and intended that the aforementioned refrigerator would be used by members of the general public, and knew of the specific uses, purposes, and requirements for which said refrigerators would be utilized.

7. Further, by placing said refrigerators on the market for sale, Defendant, Whirlpool, represented that the refrigerators would safely operate and perform the uses for which they were intended and that, in all respects, the refrigerators were of merchantable quality.

8. Prior to 2006, an Amana (Maytag/Whirlpool) refrigerator; Model #ABB2527DEW; Serial #13977249JL) was designed, manufactured, assembled, inspected, tested, distributed and placed into the stream of commerce by Defendant Whirlpool and was sold to the Insureds and installed at the Property, where it remained in place until January 8, 2018.

9. Said refrigerator was sold to, and reached, the Insureds without substantial change in its conditions, and it was not altered or modified prior to or during its use.

10. The Insureds operated the refrigerator in the normal, ordinary and intended manner and purpose at all times prior to January 8, 2018.

11. On January 8, 2018, a failure/malfunction within the refrigerator's electrical/mechanical compartment occurred, which caused a fire to ignite and cause substantial damage to the Property and the Insured's personal property located therein, as well as additional losses and expenses incurred by the Insureds (the "Loss").

12. The fire and subsequent damage to real and personal property at the Property was traced to and determined to have been caused by an electrical fault of the refrigerator's PTC switch (positive temperature coefficient thermistor).

13. The subject defect, which lead to the fire, was present since the time of the manufacture and distribution by the Defendant Whirlpool.

14. At all times relevant to this Complaint, the Defendant Whirlpool was a product seller as defined in General Statute § 52-572m, et seq.

15. As a result of the refrigerator fire on January 8, 2018 damages were incurred in the amount of $158,166.84 for remediation, renovation and repairs to the Property as well as to personal items.

16. Accordingly, pursuant to the terms and provisions of the Policy and by reason of payments to or on behalf of the insured subrogees, Christopher Kraus and Darcy Stacom, Great Northern is now subrogated to rights of the Insureds to collect that sum from any and all responsible third parties.

17. The fire and subsequent damage to the real and personal property at 12 Wells Hill Road, Easton, CT was caused by and/or resulted from the acts and/or omissions of the Defendant Whirlpool by and through its agents, servants, employees and/or representatives, acting with the course and scope of their employment and/or authority for which Whirlpool is strictly liable pursuant to General Statute § 52-572m, et seq. and § 402A of the Restatement (Second) of Torts by:

a. distributing, selling and/or supplying a defectively designed and/or manufacturing a defective refrigerator that Whirlpool knew, or should have known, subjected consumers and the Property to an unreasonable risk of harm;

b. placing its product into the stream of commerce when Whirlpool knew, or should have known, that, through consumers' normal use of the product, the refrigerator, would operate in such a manner so as to cause a fire with resultant property damage;

c. failing to properly and adequately design, assemble, inspect and/or test the refrigerator before introducing it into the stream of commerce;

d. failing to properly and adequately provide sufficient warnings and instructions as to the safe and proper use of the refrigerator;

   including, but not limited to, failing to adequately warn or instruct as to the risk of fires;

e. designing, manufacturing, distributing, selling and/or supplying the subject refrigerator without proper safety features to prevent fires within the refrigerator, rendering it hazardous and dangerous for its contemplated and intended use;

f. failing to warn the Plaintiff and others of the aforesaid defective and dangerous conditions, which it knew or should have known existed and created an unreasonable risk of harm to the Property;

g. failing to correct the defective and dangerous conditions that Defendant, Whirlpool knew, or should have known, existed and created an unreasonable risk of harm to users and consumers; and

h. failing to exercise due care in the design, manufacture, sale and/or distribution of the subject refrigerator.

18. As a direct and proximate result of Defendant Whirlpool's strict liability arising out of the subject refrigerator, as aforesaid, the Insureds were caused to sustain damages to the Property, as well as the loss of the use thereof.

19. The Insureds duly made a claim to Great Northern under the Policy for the damages sustained as a result of the Loss.

20. Great Northern paid to and/or on behalf of the Insureds certain payments pursuant to the Policy for the damages sustained as a result of the Loss.

21. By virtue of the foregoing facts and circumstances, and pursuant to the terms and conditions of the Great Northern Policy and under Connecticut law, Great Northern is

duly subrogated to its Insureds' rights against any and all parties, including Defendant Whirlpool, with respect to the Loss sustained by its Insured and paid by Great Northern, pursuant to the Policy.

22. As a direct and proximate result of the foregoing, Defendant Whirlpool is liable to Great Northern for all amounts paid to and on behalf of its Insureds for the damages sustained as a result of the Loss, including the Insureds' deductible, if any.

**COUNT TWO- BREACH OF WARRANTY AS TO WHIRLPOOL CORPORATION**

1-21. Paragraphs 1 through 21 of Count One are hereby incorporated as paragraphs 1-21 of Count Two as if fully set forth herein.

22. Defendant Whirlpool was the designer, manufacturer and/or distributor of the subject refrigerator that was sold to the Plaintiff's Insureds.

23. As a result of the design, manufacture and distribution of the subject refrigerator by Whirlpool as aforesaid, Whirlpool provided a general warranty to the general public that the subject refrigerator would be of merchantable quality and would be fit for the purpose associated with residential refrigerators.

24. The condition of the subject refrigerator, including all parts, contained a latent defect unknown to the Insureds and/or users and was not discoverable by the Insureds and/or users in the exercise of ordinary care.

25. The aforementioned failures on the part of Defendant Whirlpool, in delivering a product to the Insureds with a latent defect, constituted a breach of implied warranty of functionality, and/or merchantability, to the Insureds.

26. As a direct and proximate result of the aforementioned breach of implied warranty by Defendant Whirlpool, as aforesaid, the Insureds were caused to sustain severe and extensive damages to the Property, as well as the loss of the use thereof.

27. The Insureds duly made a claim to Great Northern under the Policy for the damages sustained as a result of the Loss.

28. Great Northern paid to and/or on behalf of the Insureds certain payments pursuant to the Policy for the damages sustained as a result of the Loss.

29. By virtue of the foregoing facts and circumstances, and pursuant to the terms and conditions of the Great Northern Policy and under Connecticut law, Great Northern is duly subrogated to its Insureds' rights against any and all parties, including Defendant Whirlpool, with respect to the Loss sustained by its Insured and paid by Great Northern, pursuant to the Policy.

30. As a direct and proximate result of the foregoing, Defendant Whirlpool is liable to Great Northern for all amounts paid to and on behalf of its Insureds for the damages sustained as a result of the Loss, including the Insureds' deductible, if any.

## COUNT THREE - <u>PRODUCTS LIABILITY AS TO GENERAL ELECTRIC COMPANY</u>

1. The plaintiff, Great Northern Insurance Company, is a New Jersey corporation authorized to issue policies of insurance in the State of Connecticut.

2. At all times relevant hereto, Great Northern Insurance Company's insureds, Christopher Kraus and Darcy Stacom, ("Insureds") owned property located at 12 Wells Hill Road, Easton, CT ("the Insured's Property" or "the Property").

3. Defendant General Electric Company ("GE") is a New York corporation with a principal place of business located at 5 Necco Street, Boston, Massachusetts and is duly registered as a foreign corporation in the State of Connecticut.

4. At all times relevant herein, GE was engaged in the business of designing, manufacturing, assembling, marketing, testing, inspecting, distributing and selling refrigerator component part(s) throughout the United States, including the State of Connecticut, such as the one at issue here.

5. GE designed, manufactured, marketed, distributed and placed into the stream of commerce refrigerators containing GE component part(s) in 2006, said products being intended for use by consumers for the ordinary purposes associated with cold food refrigeration and storage.

6. At all times relevant to this Complaint, Defendant GE knew and intended that the aforementioned refrigerator containing its component part(s) would be used by members of the general public, and knew of the specific uses, purposes, and requirements for which said refrigerators would be utilized.

7. Further, by placing said refrigerators containing its component part(s) on the market for sale, Defendant, GE, represented that the refrigerators would safely operate and perform the uses for which they were intended and that, in all respects, the refrigerators were of merchantable quality.

8. Prior to 2006, an Amana (Maytag/Whirlpool) refrigerator; Model #ABB2527DEW; Serial #13977249JL) containing GE component part(s) was designed, manufactured, assembled, inspected, tested, distributed and placed into the stream of commerce and was sold to the Insureds and installed at the Property, where it remained in place until January 8, 2018.

9. Said refrigerator was sold to, and reached, the Insureds without substantial change in its conditions, and it was not altered or modified prior to or during its use.

10. The Insureds operated the refrigerator in the normal, ordinary and intended manner and purpose at all times prior to January 8, 2018.

11. On January 8, 2018, a failure/malfunction within the refrigerator's electrical/mechanical compartment occurred, which caused a fire to ignite and cause substantial damage to the Property and the Insured's personal property located therein, as well as additional losses and expenses incurred by the Insureds (the "Loss").

12. The fire and subsequent damage to real and personal property at the Property was traced to and determined to have been caused by the failure of the refrigerator's PTC switch (positive temperature coefficient thermistor) internal to the relay switch and was completely burned up indicating an electrical fault.

13. The subject defect, which lead to the fire, was present since the time of the Defendant GE's manufacture of said refrigerator's component parts.

14. At all times relevant to this Complaint, the Defendant GE was a manufacturer as defined in General Statute § 52-572m, et seq.

15. As a result of the water leak on January 8, 2018 damages were incurred in the amount of $158,166.84 for remediation, renovation and repairs to the Property as well as to personal items.

16. Accordingly, pursuant to the terms and provisions of the Policy and by reason of payments to or on behalf of the insured subrogees, Christopher Kraus and Darcy

Stacom, Great Northern is now subrogated to rights of the Insureds to collect that sum from any and all responsible third parties.

17. The fire and subsequent damage to the real and personal property at 12 Wells Hill Road, Easton, CT was caused by and/or resulted from the acts and/or omissions of the Defendant GE by and through its agents, servants, employees and/or representatives, acting with the course and scope of their employment and/or authority for which GE is strictly liable pursuant to General Statute § 52-572m, et seq. and § 402A of the Restatement (Second) of Torts by:

  a. distributing, selling and/or supplying a defectively designed and/or manufactured a defective refrigerator and/or its component parts that GE knew, or should have known, subjected consumers and the Property to an unreasonable risk of harm;

  b. placing its product and/or its component parts into the stream of commerce when GE knew, or should have known, that, through consumers' normal use of the product, the refrigerator, would operate in such a manner so as to cause a fire with resultant property damage;

  c. failing to properly and adequately design, assemble, inspect and/or test the refrigerator and/or its component parts before introducing it into the stream of commerce;

  d. failing to properly and adequately provide sufficient warnings and instructions as to the safe and proper use of the refrigerator and/or its component parts; including, but not limited to, failing to adequately warn or instruct as to the risk of fires;

e. designing, manufacturing, distributing, selling and/or supplying the subject refrigerator and/or its component part(s) without proper safety features to prevent fires within the refrigerator, rendering it hazardous and dangerous for its contemplated and intended use;

f. failing to warn the Plaintiff and others of the aforesaid defective and dangerous conditions, which it knew or should have known existed and created an unreasonable risk of harm to the Property;

g. failing to correct the defective and dangerous conditions that Defendant, GE knew, or should have known, existed and created an unreasonable risk of harm to users and consumers; and

h. failing to exercise due care in the design, manufacture, sale and/or distribution of the subject refrigerator and/or its component part(s).

18. As a direct and proximate result of Defendant GE's strict liability arising out of the subject refrigerator and/or its component part(s), as aforesaid, the Insureds were caused to sustain damages to the Property, as well as the loss of the use thereof.

19. The Insureds duly made a claim to Great Northern under the Policy for the damages sustained as a result of the Loss.

20. Great Northern paid to and/or on behalf of the Insureds certain payments pursuant to the Policy for the damages sustained as a result of the Loss.

21. By virtue of the foregoing facts and circumstances, and pursuant to the terms and conditions of the Great Northern Policy and under Connecticut law, Great Northern is duly subrogated to its Insureds' rights against any and all parties, including Defendant GE,

with respect to the Loss sustained by its Insured and paid by Great Northern, pursuant to the Policy.

22. As a direct and proximate result of the foregoing, Defendant GE is liable to Great Northern for all amounts paid to and on behalf of its Insureds for the damages sustained as a result of the Loss, including the Insureds' deductible, if any.

WHEREFORE, Plaintiff, Great Northern Insurance Company a/s/o Christopher Kraus and Darcy Stacom, demands judgment against the Defendants for:

1. Money damages;
2. Interest;
3. Costs of this action;
4. Such other relief as the Court deems equitable.

THE PLAINTIFF

BY _____
William J. Shea
Musco & Iassogna
555 Long Wharf Drive, 10th Floor
New Haven, CT 06511
Tel: (203) 782-4122
Fax: (203) 782-4128

| | |
|---|---|
| RETURN DATE: DECEMBER 22, 2020 | : SUPERIOR COURT |
| GREAT NORTHERN INSURANCE COMPANY a/s/o Christopher Kraus and Darcy Stacom | : J.D. OF FAIRFIELD |
| | : AT BRIDGEPORT |
| VS. | : |
| WHIRLPOOL CORPORATION, ET AL | : NOVEMBER 10, 2020 |

## STATEMENT OF DEMAND

The amount in demand is in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00) exclusive of costs and interests.

THE PLAINTIFF

BY *[signature]*
William J. Shea
Musco & Iassogna
555 Long Wharf Drive, 10th Floor
New Haven, CT 06511
Tel: (203) 782-4122
Fax: (203) 782-4128